IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NICHOLAS MILLER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN BURROW, an individual,<br><br>Defendant. | Case No.  1:23-cv-00042-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant John Burrow's Motion to Dismiss Plaintiff Nicholas Miller's Complaint. Dkt. 15. Miller filed a Response to the Motion (Dkt. 17), and Burrow did not reply. Because the time for Burrow to file a reply has now passed, the matter is ripe for the Court's consideration.

Having reviewed the record and the briefs, the Court finds that the facts and legal arguments are adequately presented and that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will rule on the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion. However, because it appears the Court lacks jurisdiction, it will require that Miller file an amended complaint in order to proceed.

## II. BACKGROUND

Plaintiff Nicholas Miller is a disabled individual who uses a wheelchair for mobility purposes. Miller describes himself as "an independent advocate of the rights of similarly situated disabled persons." Dkt. 1, at 2. His advocacy involves, in part, visiting places of public accommodation to determine whether those places comply with the accessibility requirements of the Americans with Disabilities Act (the "ADA"). If Miller believes that a particular establishment is not ADA compliant, he sues for injunctive relief.[1]

Miller alleges that, in May 2022, he attempted to patronize a property owned by Burrow, but that multiple "physical barriers, dangerous conditions and ADA violations" prevented his "full and equal enjoyment of the [property]." *Id.* at 7. As a result of this visit, Miller initiated the present suit.

Burrow answered Miller's Complaint (Dkt. 8), then, roughly eleven months later, he filed the instant Motion to Dismiss. Dkt. 15. Burrow asserts that, due to recent renovations to the property in question, Miller's claims are moot and should be dismissed under Federal Rule of Civil Procedure 12(b)(1). *See generally* Dkt. 15-1.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

---

[1] In addition to the present suit, Miller currently has seven other ADA suits before the Court.

MEMORANDUM DECISION AND ORDER - 2

(1994). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

Federal courts have subject matter jurisdiction over "actual cases or controversies." *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (cleaned up). If a claim is moot, then no actual case or controversy exists. Thus, when a party moves to dismiss on the basis of mootness, that party is ultimately arguing that the court lacks subject matter jurisdiction over the complaint, making Rule 12(b)(1) the proper procedural avenue to raise the objection. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *Id.* A factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir 2014). When a defendant opts to launch a factual attack, "the plaintiff must support [his or] her jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context"—that is, the plaintiff must prove "by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* (cleaned up); *see also St. Clair v. City of Chico*, 880 F.2d 199, 201 (stating that after a defendant launches a factual attack, it becomes "necessary for the [plaintiff] to present affidavits or other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction"). Significantly, in evaluating the evidence, the district court "need not presume the truthfulness of the

plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Dismissal for lack of jurisdiction is inappropriate "when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983).

**B. Standing**

Issues related to subject matter jurisdiction also arise when a plaintiff lacks standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (referring to standing as an "irreducible constitutional minimum"); *see also* Fed. R. Civ. P. 12(h)(3) (stating that district courts must dismiss cases over which they lack subject matter jurisdiction). Standing has three requirements. *Id.* "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up). Next, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Id.* (cleaned up). Finally, it must be likely, and not merely speculative, that a favorable decision would redress the injury. *Id.* at 561. "The party asserting federal jurisdiction bears the burden of establishing these requirements at every stage of the litigation . . . ." *Krottner v. Starbucks Corp*, 628 F.3d 1139, 1141 (9th Cir. 2010).

District courts have authority to adjudicate issues of standing sua sponte. *Bernhardt v. Cnty of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). In the Ninth Circuit, if a court

dismisses a complaint for lack of standing (or any other reason), it should grant the plaintiff leave to amend the complaint unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

### III. ANALYSIS

#### A. Mootness

Burrow's attack on Miller's Complaint is a factual one. He claims that "repairs made to the [p]roperty at issue have rendered the entirety of [Miller's] lawsuit moot." Dkt. 15-1, at 7. In support of this claim, Burrow has submitted an affidavit stating that he completed his repairs to the property on March 7, 2023, and that he "intend[s] to comply with the ADA" moving forward. Dkt. 15-2, at 2. He has also submitted two photos, each showing a different angle of what appears to be a newly renovated accessible parking space.

In response, Miller notes that Burrow's photos and affidavit are "glaringly devoid of any technical measurements to refute [Miller's] claims." Dkt. 17, at 4. He also argues that the jurisdictional issues here are too intertwined with the merits of the case for dismissal to be appropriate. *Id.* at 5–9. Finally, he introduces an affidavit from Blake Watts, an ADA consultant, who, upon review of the photos, notes that Burrow has done nothing to prevent parked vehicles from blocking the accessible route and also notes that, without any measurement information, it is impossible to determine from the photos alone whether the repairs made by Burrow were actually sufficient to bring the property into ADA compliance. Dkt. 17-1, at 2–3.

MEMORANDUM DECISION AND ORDER - 5

From his photos and affidavit, it appears that Burrow has made some renovations to his property. The Court commends his efforts. But the photos and affidavit are ultimately insufficient to show that the property is now ADA compliant. ADA requirements, as outlined in the ADA Accessibility Guidelines (the "ADAAG"), "are as precise as they are thorough, and the difference between compliance and noncompliance . . . is often a matter of inches." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945–46 (9th Cir. 2011).

Here, the testimony of a layperson and some photos without measurements are not precise or thorough enough to ease, much less resolve, the Court's accessibility concerns. For example, while it is clear that Burrow has painted a loading aisle next to the accessible parking space, the Court is left to guess at whether the aisle is wide enough to comply with the ADAAG. The Court must similarly guess as to whether Burrow's leveling efforts have left the accessible parking space level enough and whether the slope of the curb ramp falls within a permissible range. Even more fatal to Burrow's argument is the fact that, as noted by Watts, he has done nothing to resolve Miller's concerns about overhanging cars obstructing the accessible route into the store—an issue Miller specifically raised in his Complaint. Dkt. 1, at 9.

In sum, the evidence before the Court is not sufficient to show that the parking lot is now ADA compliant. Thus, Miller's Complaint is not moot and is not worthy of dismissal on the basis of mootness.

### B. Standing

As mentioned above, to show standing, a plaintiff must "demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] actions, and that the

MEMORANDUM DECISION AND ORDER - 6

injury can be redressed by a favorable decision." *Chapman*, 631 F.3d at 946; *see also Lujan*, 504 U.S. at 560–62. To establish an injury-in-fact, a plaintiff bringing an ADA discrimination claim must show "he encounter[ed] a barrier at a place of public accommodation that deprive[d] him of full and equal enjoyment of the facility due to his particular disability." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907 (9th Cir. 2011) (cleaned up). The Ninth Circuit has elaborated that establishing an injury-in-fact requires a plaintiff to describe the alleged barriers with specificity *and* connect those barriers to the plaintiff's disability. *Chapman*, 631 F.3d at 954; *see also Kohler v. Bed Bath & Beyond of California, LLC*, 2012 WL 2449928, at *5 (C.D. Cal. June 27, 2012) (stating that an ADA plaintiff must "identify the nexus between the alleged ADA-noncompliant barrier and the plaintiff's disability status").

In *Chapman*, an ADA plaintiff alleged that he encountered architectural barriers at a Pier 1 Imports that, because of his disabilities, denied him full and equal access to the store. 631 F.3d at 943. However, in his complaint, the plaintiff simply listed barriers that he perceived to be ADA violations, "without connecting the alleged violations to [his] disability." *Id.* at 954. This approach was deemed "jurisdictionally defective," because it left the court guessing as to how the listed barriers personally impacted the plaintiff. *Id.* at 954–55.

In Miller's complaint, he states that he uses a wheelchair, then he lists eleven separate ways in which he believes the Burrow property violates the ADA. Dkt. 1, at 2, 7–10. The alleged violations include lack of accessible parking, lack of parking stops, inadequate signage, and insufficient maintenance practices. *Id.* at 7–10. Miller states flatly that these

MEMORANDUM DECISION AND ORDER - 7

violations "made it dangerous" for him to utilize the property and denied him access equal to that of Burrow's able-bodied patrons. *Id.* at 8–9, 13. However, these allegations of danger and unequal access, without more, do not rise to the level of specificity required by *Chapman*. Under *Chapman*, Miller is required to connect the alleged violations to his disability. *Chapman*, 631 F.3d at 955. This would mean, at very least, explaining the dangers that the lack of accessible parking, inadequate signage, and insufficient maintenance pose to someone in a wheelchair. Instead, like the plaintiff in *Chapman*, Miller leaves the Court in the dark as to how the alleged violations impacted his beneficial use of the premises. While it is true that courts should interpret civil rights complaints generously, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Id.* at 954 (cleaned up).

Because Miller did not identify the nexus between the property's alleged ADA violations and his own disability, his Complaint is jurisdictionally defective. However, the Complaint could likely be saved by amendment. *See Harris*, 573 F.3d at 737. Accordingly, Miller will have thirty (30) days from the issuance of this Order to file an Amended Complaint. If the Amended Complaint lacks the level of specificity required by *Chapman*, the Court will dismiss the Amended Complaint sua sponte, or if Miller fails to file an Amended Complaint, the Court will dismiss this case in its entirety. *See* Fed. R. Civ. P. 12(h)(3).

### C. Attorney's Fees and Costs

At the end of his Motion, Burrow makes a brief request for attorney's fees and costs. Dkt. 15-1, at 11. ADA defendants "can be awarded fees . . . only in exceptional

circumstances," such as when a complaint is "frivolous, unreasonable, or without foundation." *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1020 (9th Cir. 2015) (cleaned up). Burrow claims that Miller's actions meet this standard because Miller has maintained this suit "despite being informed that his claims are moot." Dkt. 15-1, at 11. But, as discussed above, Burrow has not shown that Miller's Complaint is moot, and simply incanting the word does not make it so. Accordingly, Burrow's claims of frivolity fall flat, and the Court denies his request.

## IV. CONCLUSION

Miller's Complaint is not moot, but it lacks the specificity necessary to establish the injury-in-fact component of standing. Because this fault could be remedied by an amendment to the Complaint, the Court grants Miller thirty (30) days from the issuance of this Order to file an Amended Complaint. If he does not do so, or if the Amended Complaint does not remedy the Court's standing concerns discussed herein, the Court will dismiss this case in its entirety.

## V. ORDER

Now, therefore, **IT IS HEREBY ORDERED**:

1. Burrow's Motion to Dismiss (Dkt. 15) is DENIED.
2. Miller has thirty (30) days from the issuance of this Order to file an Amended Complaint, remedying the Court's standing concerns raised herein.
   a. Failure to file, or failure to remedy the Court's concerns, will result in dismissal.

DATED: May 16, 2024

_____
David C. Nye
Chief U.S. District Court Judge